UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MANOSHA G., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-00004-TAB-MPB |
| | ) |
| FRANK BISIGNANO Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.      Introduction**

Plaintiff Manosha G. appeals the Social Security Administration's denial of her application for disability benefits. Plaintiff argues the Administrative Law Judge failed to properly address her mental limitations in maintaining concentration, persistence, or pace and improperly evaluated her subjective symptom allegations. However, Plaintiff points to no evidence demonstrating she required additional limitations beyond those set forth by the ALJ. In addition, the ALJ's assessment of Plaintiff's subjective symptoms was thorough and grounded in substantial evidence. Accordingly, Plaintiff's request for remand [Filing No. 12] is denied.

**II.     Background**

On November 15, 2022, Plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income. In both applications, Plaintiff alleged disability since September 27, 2022. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 27, 2022, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: seizures, a history of cerebral spinal fluid rhinorrhea and encephalocele status post-surgery, bipolar disorder I, depression, and anxiety. [Filing No. 10-2, at ECF p. 15.] At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to work despite her limitations. The ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with the following additional limitations:

> [Plaintiff] can occasionally climb ramps and stairs; frequently balance; no climbing of ladders, ropes, or scaffolds; no exposure to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards, such as unprotected heights or dangerous machinery; no requirements for driving. [Plaintiff] is able to understand, remember, and carry out simple instructions, sustain attention and/or concentration for 8 hours in the workday on these simple tasks, and can perform no work requiring a specific production-rate pace, such as assembly line work or hourly production quotas. [Plaintiff] can have occasional interactions with supervisors and coworkers, but can have no interactions with the general public as part of job tasks/duties.

[Filing No. 10-2, at ECF p. 20-21.]

At step four, the ALJ concluded that Plaintiff could not perform any past relevant work. At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including routing clerk, marking clerk, and hand packager. [Filing No. 10-2, at ECF p. 36.] Accordingly, the ALJ concluded that Plaintiff was not disabled.

### III.     Discussion

Plaintiff claims the ALJ failed to adequately address (1) her moderate limitations in maintaining concentration, persistence or pace in the RFC or the hypothetical to the vocational expert and (2) Plaintiff's subjective allegations.   The Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, 587 U.S. 97, 99, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence."  (Internal quotation marks omitted)).  "The threshold for substantial evidence is not high."  *Thorpe v. Bisignano*, No. 24-2214, __ F. 4th __, __, 2025 WL 2169309, at *4 (7th Cir. July 31, 2025) (internal citation and quotation marks omitted).  In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions."  *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

### A.     Moderate limitations

Plaintiff insists that the ALJ failed to properly address her moderate limitations in maintaining concentration, persistence, and pace.  The ALJ considered whether the "paragraph B" criteria for evaluating mental disorders were satisfied and found that Plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentration, persistence, or maintaining pace;

3

and a mild limitation in adapting or managing oneself. Thus, the ALJ concluded that Plaintiff's mental impairments were non-severe. [Filing No. 10-2, at ECF p. 18-19.] Plaintiff agrees that the medical evidence supported moderate ratings of the "paragraph B" criteria, but she argues the ALJ failed to implement corresponding functional limitations in Plaintiff's RFC to account for Plaintiff's mental difficulties.

Specifically, Plaintiff argues that, in finding that Plaintiff had the ability to concentrate, persist, and maintain pace eight hours each workday, the ALJ's RFC was at odds with her finding that Plaintiff has at least moderate limitations in concentration, persistence, and pace. Plaintiff cites *Amy R. v. Kijakazi*, No. 1:21-cv-260-MJD-JPH, 2022 WL 796332, at *4 (S.D. Ind. Mar. 15, 2022), where this Court stated:

> [T]he ALJ's determination that Claimant could sustain attention and/or concentration for at least two-hour periods at a time and for 8 hours in the workday essentially amounts to no limitation at all. . . . It therefore does not make sense that Claimant, who has moderate limitations in her ability to maintain attention and concentration, would require the same frequency of breaks as a typical worker.

(Internal quotation marks omitted). Thus, Plaintiff argues that the ALJ has offered "no basis" for finding that Plaintiff could concentrate, persist, and maintain pace a for a full eight hours. In *Amy R.*, like here, the ALJ limited Plaintiff to short, simple, routine tasks. *Id.*

The Commissioner criticizes Plaintiff for focusing solely on prior caselaw and ignoring the fact that the Court reviews an ALJ's decision on a case-by-case basis. *See, e.g., Debra S. v. Saul*, No. 1:18-cv-3736-SEB-TAB, 2019 WL 4675221, at *3 (S.D. Ind. Aug. 30, 2019) (citing *Biestek v. Berryhill*, 587 U.S. 97, 108, 139 S. Ct. 1148, 1157 (2019)). In addition, the Commissioner emphasizes that the RFC corresponded with—and for the most part, was more restrictive than—the only medical opinions in the record addressing Plaintiff's mental work limitations. [Filing No. 14, at ECF p. 11 (citing Filing No. 10-2, at ECF p. 20-21; Filing No. 10-

4

3, at ECF p. 8, 19, 33, 45).]  The state agency consultants opined Plaintiff could perform detailed, but not complex tasks—which is a greater ability than the "simple" tasks limitation the ALJ ultimately put in place—with the ability to sustain attention, concentration, persistence, and pace as needed to complete those tasks.  [Filing No. 10-2, at ECF p. 20-21; Filing No. 10-3, at ECF p. 8, 19, 33, 45.]

The Commissioner also points to analogous caselaw from the Seventh Circuit, *Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019).  In *Jozefyk*, the Seventh Circuit held that a limitation to simple, repetitive tasks with limited interaction adequately accommodated Jozefyk's moderate limitations in concentration, persistence, or pace.  *Id*. at 498.  The Seventh Circuit also noted that even if the ALJ's RFC assessment in *Jozefyk* were flawed, any error was harmless because Jozefyk failed to hypothesize any additional work restrictions that might address his limitations in this area or otherwise cite evidence demonstrating he required more stringent limitations than assessed by the ALJ.  *Id*.  Similarly, in *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), the Seventh Circuit rejected a plaintiff's argument that there was an inherent inconsistency between a moderate rating for concentration, persistence, or pace and the ability to perform simple, repetitive tasks at a consistent pace.

Ultimately, Plaintiff's arguments fall short.  While there have been prior cases where the Court found a limitation like the one given to Plaintiff insufficient, Plaintiff fails to highlight any medical opinion evidence omitted by the ALJ that would indicate that Plaintiff needed additional limitations.  Rather, Plaintiff reiterates—without support—her subjective belief that the ALJ should have discussed in more detail her ability to complete simple tasks for sustained periods without losing attention.  [Filing No. 12, at ECF p. 17.]  Nor does Plaintiff identify additional

limitations supported by the record she believes would accommodate her moderate limitations in concentration, persistence, and pace that the ALJ allegedly overlooked.

As noted above, in relation to mental impairments and capacity, the ALJ found Plaintiff could understand, remember, and carry out simple instructions; sustain attention and/or concentration on simple tasks for 8 hours in the workday on simple tasks, and perform no work requiring a specific production-rate pace, such as assembly line work or hourly production quotas. [Filing No. 10-2, at ECF p. 21.] These specific mental work limitations adequately accommodated Plaintiff's moderate limitations in concentration, persistence, or pace. It is Plaintiff—not the ALJ—who has the burden of proving a disabling degree of symptoms. *See, e.g., Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) ("Remember, too, that [the plaintiff] bears the burden of proving she is disabled. She failed to carry that burden by not identifying any objective evidence in the record corroborating [a physician's] statement. Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence."). By failing to do so, Plaintiff has not established reversible error.

   **B.**  **Evaluation of Plaintiff's Subjective Allegations**

Plaintiff also claims that the ALJ failed to properly address her subjective symptoms. [Filing No. 12, at ECF p. 18.] The regulations describe a two step-process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3

(Oct. 25, 2017).  In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons."  *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (internal citations omitted).  "[The Court] will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support."  *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) (internal citation and quotation marks omitted).

        The ALJ recounted Plaintiff's subjective statements and found that her medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record.  The ALJ concluded the evidence of Plaintiff's daily activities demonstrated Plaintiff's limitations were less severe than she alleged.  The ALJ found Plaintiff could manage her personal care and hygiene, prepare simple meals, feed pets, perform household chores, read, make jewelry, drive herself and her son to work, and work part-time.

        Plaintiff argues that the ALJ failed to demonstrate how Plaintiff's ability to perform these daily tasks supported the conclusion that she can sustain full-time work.  Plaintiff suggests the ALJ failed to consider the qualifying statements she made about her daily activities when assessing the impact of her symptoms on work functioning.  Plaintiff highlights her subjective reports (corroborated at least in part by her son) that she rarely bathes; rarely gets dressed; and cut off all of her hair; only cooks microwave items or hot dogs; refrained from engaging in her hobbies for about a year; could not drive by herself, due to depression symptoms; occasionally

stays in bed all day due to depression; and has regular manic episodes that affect her ability to work and sleep and can cause seizures.

However, the ALJ cited many of these specific instances earlier in her decision. [Filing No. 10-2, at ECF p. 19.] The ALJ also pointed out that Plaintiff's allegations of disabling limitations were inconsistent with other reports that Plaintiff worked part-time as a home healthcare aid, twice a week for six hours at a time, with responsibilities that included bathing, dressing, cooking, cleaning, gardening, laundry and grocery shopping for her client. Plaintiff also cared for her pets by feeding them and cared for her boyfriend's child while he worked, even though her doctor advised against babysitting without another person present. [Filing No. 10-2, at ECF p. 19-20.] Thus, the ALJ did not overstate Plaintiff's daily activities, nor did the ALJ equate her ability to perform daily activities with her ability to work full time. Rather, the ALJ appropriately considered Plaintiff's activities of daily living (while factoring in the qualifying statements), as one factor when assessing the impact of her symptoms on her work capacity.

Plaintiff also criticizes the ALJ's analysis of Plaintiff's treatment history and argues that the ALJ improperly considered the lack of psychiatric inpatient hospitalization as a factor in determining whether Plaintiff's mental symptoms limited her work capacity. While Plaintiff cites a string of cases that caution against relying too much on the absence of psychiatric hospitalization when assessing a claimant's mental symptoms, Plaintiff failed to demonstrate that the ALJ did so here. The ALJ summarized Plaintiff's treatment history, noting Plaintiff was engaged in outpatient therapy for her mental health conditions, with no inpatient hospitalizations. Thus, the ALJ concluded that "[t]his lack of more extensive treatment is inconsistent with the existence of disabling impairments." [Filing No. 10-2, at ECF p. 31]

8

Earlier in the decision, the ALJ noted that Plaintiff attended therapy appointments once a week. [Filing No. 10-2, at ECF p. 17.] The ALJ mentioned that Plaintiff reported to a consultative examining physician that she had been evaluated for inpatient psychiatric care, but was never admitted. [Filing No. 10-2, at ECF p. 20.] However, the ALJ also discussed, in detail, outpatient therapy notes documenting that Plaintiff's moods were much more stable because working part-time helped Plaintiff feel better and provided some relief for her financial stress. [Filing No. 10-2, at ECF p. 28, 29-30.] Thus, there is no indication that the ALJ relied heavily on Plaintiff's lack of inpatient treatment in making her determination. Rather, the ALJ accounted for Plaintiff's outpatient therapy as treatment other than medication when assessing the impact of Plaintiff's symptoms on her mental work capacity. Moreover, the Seventh Circuit has endorsed that a lack of inpatient treatment can be an appropriate consideration when evaluating treatment other than medication as a factor in the subjective symptom evaluation. *See, e.g., Chambers v. Saul*, 861 Fed. App'x 95, 101 (7th Cir 2021) (unpublished) (ALJ appropriately considered evidence indicating that when the plaintiff "reported thoughts of self-harm and worsening depression, she was neither prescribed a significantly more aggressive treatment plan nor admitted to a hospital.").

In addition, Plaintiff accuses the ALJ of playing doctor and improperly evaluating the medical opinion of Dr. Whitney Gauen. Dr. Gauen, a neurologist at IU Health, first saw Plaintiff on December 12, 2022, to address her history of seizures beginning in the summer of 2021. Dr. Gauen performed a routine awake EEG on Plaintiff on December 29, 2022. The EEG report from December 29, 2022, concludes by stating: "This awake-only EEG is normal. No epileptiform abnormalities were seen." [Filing No 10-7, at ECF p. 394.] Dr. Gauen signed the report on December 30, 2022. This is the only EEG in the medical record. A progress report

9

from July 28, 2023, verified by Dr. Gauen, states that Plaintiff had a "Routine EEG December 2022 normal in awake state only." [Filing No. 10-7, at ECF p. 478.] The state agency physicians also cited the normal EEG dated December 2022 in their prior administrative medical findings [Filing No. 10-3, at ECF p. 4, 15], and they concluded Plaintiff's seizure disorder did not preclude Plaintiff from performing a range of work that accounted for hazard limits like those assessed by the ALJ.

However, Plaintiff emphasizes a later opinion from Dr. Gauen. In a medical source statement assessing residual functioning capacity provided to the SSA in June 2024, Dr. Gauen opined that Plaintiff would miss work up to 48 hours after a seizure, or up to two days per month. As the objective medical findings to support her diagnosis, Dr. Gauen wrote: "abnormal EEG, abnormal brain MRI[.]" [Filing No. 10-9, at ECF p. 9.] This appears to be the first and only reference to an abnormal EEG in the medical record. Thus, the ALJ found Dr. Gauen's opinion not persuasive and "not supported by [Plaintiff's] awake EEG that was normal, or by her treatment records that reflect [Plaintiff] responded well to her surgery for the encephalocele and that breakthrough seizures are related to medication noncompliance[.]" [Filing No. 10-2, at ECF p. 34.] The ALJ did not impermissibly interpret the EEG and make medical judgments. Rather, the ALJ cited findings from Dr. Gauen's own reports, as well as outpatient therapy and other medical records, that contradicted Dr. Gauen's medical source statement.

Plaintiff also argues the ALJ impermissibly played doctor in assuming that Plaintiff's skull surgery in March 2023 performed by Dr. Elisa Illing from IU Health had anything to do with her seizures or other neurological issues. [Filing No. 12, at ECF p. 24.] As set forth in the ALJ's decision, Dr. Illing performed "surgery for an endoscopic endonasal approach to the right lateral recess of sphenoid encephalocele" after an MRI showed stigma of intracranial

hypertension and a right middle cranial fossa encephalocele in the lateral recess of the sphenoid sinus. [Filing No. 10-2, at ECF p. 27.] Plaintiff claims that no doctor opined that the surgery would impact her seizures or that doing well after surgery meant she would no longer have seizures. However, Dr. Gauen's November 2023 treatment notes document Plaintiff's disappointment after surgery and her hopes that she would be weaned off her seizure medications and ultimately would be seizure free. [Filing No. 10-8, at ECF p. 377.] According to that treatment note, Dr. Gauen told Plaintiff that she would likely be on anti-epileptic drugs for the rest of her life and would always be at a higher risk for seizures than the general population, but the goal was to reduce seizures as much as possible. Dr. Gauen's same clinical note stated: "She continues to have breakthrough seizures which I suspect are due to medication noncompliance." [Filing No. 10-8, at ECF p. 378.] Thus, the ALJ relied on objective medical findings and conclusions that required no interpretation when she stated her reasons for finding Dr. Gauen's opinion was not persuasive.[1]

Finally, Plaintiff argues that the ALJ relied too heavily on Plaintiff's medication noncompliance and claims the record supports the conclusion that Plaintiff's bipolar disorder limited her ability to comply with the medication regimen. However, the ALJ's decision does not reflect an overemphasis on Plaintiff's medication use or noncompliance. The ALJ discussed some of the same therapy notes that Plaintiff cites in her brief related to Plaintiff forgetting to

---

[1] Plaintiff also argues, for the first time in her reply brief, that the ALJ's dismissal of Nurse Practitioner Tina Baxter's opinion as "not persuasive" is unsupported. The ALJ's evaluation of Baxter's opinion is, at times, difficult to follow. The ALJ confusingly stated that Baxter's opinion "is/is not supported by her treatment records at Adult and Child, that demonstrate varying mood, but improvement with medication and therapy[.]" [Filing No. 10-2, at ECF p. 33.] However, arguments raised for the first time in a reply brief are waived. *See, e.g., Swiecichowski v. Dudek*, 133 F4th 751, (7th Cir. 2025) ("[A]lthough Swiecichowski expands on this argument in her reply brief, arguments raised for the first time in reply are waived."). Thus, the Court need not review the ALJ's discussion of Baxter's opinion.

11

take her medications. It is true that the record shows Plaintiff, at times, forgot to take her nighttime dose of medication for various reasons, including side effects of not being able to wake up the next morning, and did not like taking her medications. However, the record also indicates Dr. Gauen remedied Plaintiff's habit of forgetting her nighttime medication dose by prescribing a time-released medication for Plaintiff to take once every morning. The ALJ specifically noted Plaintiff's testimony confirming Dr. Gauen changed her medication to address her nighttime forgetfulness, as well as other detailed discussions of the type, dosage, efficacy, and prescription changes documented throughout the record, when the ALJ considered Plaintiff's treatment with medication as one factor in her subjective symptom analysis. [Filing No. 10-2, at ECF p. 23.] In addition, the ALJ included additional hazard limitations in Plaintiff's RFC based on possible side effects from her medications. In sum, the ALJ's subjective symptom evaluation considered a variety of valid factors and gave specific reasons supported by the record.

### IV.     Conclusion

For these reasons, Plaintiff's request for remand is denied. [Filing No. 12.]

Date: 9/18/2025

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email